UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LAURICE EL BADRY RAHME LTD. DBA LAURICE & CO., a New York Corporation, | : : : | ECF CASE |
| Plaintiff, | : : : | Civil Action No.: |
| -against- | : : : | **COMPLAINT** |
| KIERIN HOLDINGS LLC, a Delaware Limited Liability Company, | : : : | JURY TRIAL DEMANDED |
| Defendant. | : : : | |

Plaintiff Laurice El Badry Rahme LTD. d/b/a Laurice & Co ("Laurice"), by its attorneys, for its complaint against Defendant Kierin Holdings LLC ("Kierin") herein alleges as follows:

1.       This is an action for violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1117, 1125; New York Gen. Bus. Law §360-l and 349-h; and for violation of the common law of the State of New York pertaining to unfair competition.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1338 with respect to claims arising under the Lanham Act, 15 U.S.C. § 1051, et. seq. and under principles of supplemental jurisdiction, 28 U.S.C. §1367(a).

3.       Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is a claim or action brought pursuant to the Lanham Act, because Kierin resides and/or conducts business in this judicial district and because a substantial part of the events giving rise to the claims herein occurred in this district.

## THE PARTIES

4.       Plaintiff Laurice is a corporation duly organized and existing under the laws of the State of New York, having an address at 9 Bond Street, New York, New York 10012.

1

5.     Laurice is a privately owned business which manufactures, markets, and sells fragrances, cosmetics (including body cream and lipstick), and candles.

6.     Upon information and belief, Defendant Kierin is a Limited Liability Company duly organized and existing under the laws of the State of Delaware, having an address at 7 Corporate Drive, Orangeburg, New York 10962.

7.     Upon information and belief, Kierin operates a satellite office with an address at 244 Fifth Ave., Suite 2326 New York, New York 10001.

8.     Upon information and belief, Kierin transacts business within this district, derives revenue from intrastate and interstate commerce, and has committed tortious acts within this district and also without this district having consequences within this district, and Kierin is otherwise within the jurisdiction of this Court.

## BACKGROUND

9.     In 2002, Laurice, a well-known fragrance house, launched a line of perfumes which pay homage to the great city of New York. As such, the scents are named after notable geographic neighborhoods and locations in and around the City of New York. The line of scents and related cosmetic and beauty products are the creation of French perfume connoisseur Laurice Rahme.

10.     Laurice named its perfume line BOND NO. 9 and BOND NO. 9 NEW YORK in honor of its flagship location at 9 Bond Street in New York City.

11.     Each fragrance in Laurice's collection represents a location or neighborhood of a New York City locale and surrounding locations. Laurice's fragrance collection has a dual purpose: to restore artistry to perfumery and to mark neighborhoods and locations of New York, regardless of whether they are well-known, with a scent of their own.

12.     Laurice's collection of fragrances includes various New York designations to identify its different fragrances, including Nolita, Madison Avenue, Wall Street, Bleecker Street, Liberty Island, Madison Square Park, Queens, Park Avenue South, NoHo, Astor Place, Chinatown, High Line, Central Park, Central Park South, Central Park West, Sutton Place, SoHo,

2

West Side, Manhattan, New Haarlem, Park Avenue, Riverside Drive, Hudson Yards, New York Nights, Bryant Park, Lexington Avenue, Fashion Avenue, Broadway Nite, So New York, Union Square, Little Italy, Washington Square, Brooklyn, Coney Island, and West Broadway. Each of these fragrances and marks are part of family of well-known trademarks that evoke the essence and olfactory presence of New York City, and its districts, neighborhoods, boroughs, landmarks, and places.

13.     Through Laurice's hard work and efforts, many of Laurice's New York trademarks have grown a national and international following. Laurice's products are marketed via its own retail boutiques located at 9 Bond Street in New York City, 863 Washington Street in New York City, 897 Madison Avenue in New York City, 399 Bleecker Street in New York City, 45 Main Street in Sag Harbor, New York, and in the Aventura Mall in Miami, Florida.

14.     Laurice's fragrances and related products are also marketed and sold via the Internet on Laurice's website www.bondno9.com, department stores such as Saks Fifth Avenue, Harrods, and through specialty retailers throughout the United States and internationally.

15.     Laurice's fragrances and other related products have received a great deal of positive publicity and have been subject to various articles and features discussing Laurice's New York-inspired trademarks and fragrances from various sources, including The New York Times, The Los Angeles Times, Harper's Bazaar, OK! Magazine, People Magazine, Cosmopolitan, InStyle, Marie Claire, Allure Magazine, Women's Wear Daily, and Essence Magazine.

16.     Laurice's products are frequently reviewed and discussed on fragrance blogs, including Basenotes, Now Smell This, Scents of Self, Sweet Diva, and Perfume Posse.

17.     Laurice's association with everything New York is immediately apparent to both its consumers and the general public. Laurice uses its distinct NYC Token Logo (depicted below) on nearly all of its fragrances and features images and imagery of New York City and its neighborhoods throughout its website, bondno9.com, and on its product packaging.



18.    Laurice's use of various New York-based designations to identify its different fragrances conjures up Laurice's well-known association with New York City that the trade and consumers alike recognize. Laurice and its various New York-based brands are synonymous with New York, and in particular with New York City.

19.    Furthermore, each of Laurice's products feature distinctive and unique designs on the product packaging and perfume bottle which are used to identify its fragrances while also

4

conjuring the connotation associated with each New York and New York City neighborhood or location.

20.     Laurice actively markets its fragrances to conjure up the connotation associated with each New York and New York City neighborhood or location. Included as **Exhibit A** are marketing materials in the form of a map of New York City used by Laurice which shows the island of Manhattan and its various neighborhoods/locations. The map shows that Laurice has various fragrances which are inspired by and connote specific locations in New York.

### Laurice's Trademarks and Registrations

21.     Laurice registered its trademark BOND NO. 9 NOLITA with the United States Patent and Trademark Office ("USPTO") and owns all right, title and interest in and to the mark BOND NO. 9 NOLITA. This mark, filed on October 5, 2016, is the subject of U.S. Registration No. 5,444,197 issued by the USPTO on April 10, 2018 in connection with "Fragrances for personal use, namely, perfume, colognes; after bath splashes, body sprays, shower gels, soaps, body lotions, massage oils, cosmetics; non-medicated skin care preparations, namely, body creams, skin lotions, skin cleansers, skin creams, skin exfoliates, skin moisturizers and skin toners; makeup, lipstick, foundation powders, eye shadow, nail polish, mascara and eye pencils" and cites a date of first use at least by March 2017. This registration is valid and subsisting. A true and accurate copy of the registration certificate of U.S. Registration No. 5,444,197 is attached as **Exhibit B.**

22.     In addition to its BOND NO. 9 NOLITA registration, Laurice has, since at least as early as March 2017, provided perfumes, candles, and body lotion under the mark NOLITA by itself. Since then, Laurice has owned, maintained, and developed common law and equivalent trademark rights in the mark NOLITA in connection with perfumes.

23.     As shown in **Exhibit C** and depicted below, the NOLITA mark has been used by Laurice on its product packaging for perfumes. Exhibit C also includes advertising of the NOLITA mark as used by Laurice.

5



24.     Laurice has used the NOLITA mark in interstate commerce since at least as early as March 2017 in connection with Class 3 goods, namely perfumes and body lotion, and Class 4 goods, namely candles. Laurice made bona fide use of the NOLITA mark in the ordinary course of trade. Indeed, Laurice has used the NOLITA mark, continues to use the NOLITA mark in commerce, and has a bona fide intent to use the NOLITA mark in the future.

25.     The NOLITA mark is inherently distinctive or has developed definite secondary meaning through extensive use of the mark and promotion of Laurice's NOLITA perfumes and other products. Laurice has established and developed strong proprietary common law trademark rights in the NOLITA mark on or in connection with perfumes.

26.     Laurice relies on the foregoing registration of BOND NO. 9 NOLITA, as well as its common law rights and on its use of the NOLITA marks in interstate commerce to buttress this action. The aforementioned registrations for BOND NO. 9 NOLITA, as well as Laurice's

common law rights in the mark NOLITA are collectively referred to as "Laurice's NOLITA Marks."

27.    Laurice registered its trademark BOND NO. 9 HIGH LINE with the USPTO and owns all right, title and interest in and to the mark BOND NO. 9 HIGH LINE. This mark is the subject of U.S. Registration No. 3,883,256 issued by the USPTO on November 30, 2010 in connection with "Fragrances for personal use, namely, perfumes, colognes, body sprays, body lotions, non-medicated skin care preparations, namely, body creams, skin lotions, skin cleansers, skin creams, skin moisturizers" and cites a date of first use at least by March 22, 2010. This registration is incontestable, valid, and subsisting. A true and accurate copy of the registration certificate of U.S. Registration No. 3,883,256 is attached as **Exhibit D.**

28.    In addition to its BOND NO. 9 HIGH LINE registration, Laurice has, since at least as early as November 2010, provided perfumes and body wash under the mark HIGH LINE. Since then, Laurice has owned, maintained, and developed common law and equivalent trademark rights in the mark HIGH LINE in connection with perfumes and body wash.

29.    As shown in **Exhibit E** and depicted below, the HIGH LINE mark has been used by Laurice on its product packaging for perfumes.



30.     Laurice has used the HIGH LINE mark in interstate commerce since at least as early as November 2010 in connection with Class 3 goods, namely perfumes and body wash. Laurice made bona fide use of the HIGH LINE mark in the ordinary course of trade. Indeed, Laurice has used the HIGH LINE mark, continues to use the HIGH LINE mark in commerce, and has a bona fide intent to use the HIGH LINE mark in the future. The HIGH LINE mark is inherently distinctive or has developed definite secondary meaning through extensive use of the mark and promotion of Laurice's HIGH LINE perfumes and other products. Laurice has established and developed strong proprietary common law trademark rights in the HIGH LINE mark on or in connection with perfume and body wash.

31.     Laurice relies on the foregoing registration of BOND NO. 9 HIGH LINE, as well as its common law rights and on its use of the HIGH LINE marks in interstate commerce to buttress this action. The aforementioned registration for BOND NO. 9 HIGH LINE, as well as Laurice's common law rights in the mark HIGH LINE are collectively referred to as "Laurice's HIGH LINE Marks."

32.     Laurice also owns all right, title, and interest in and to multiple U.S. Registrations issued by the USPTO consisting of the term CENTRAL PARK:

- U.S. Registration No. 2,998,759 registered on September 20, 2005 for the mark CENTRAL PARK in connection with "fragrances for personal use, namely, perfume" and cites a date of first use at least by July 2004 and has been continually used in commerce since then. This registration is incontestable, valid, and subsisting. A true and accurate copy of the registration certificate of U.S. Registration No. 2,998,759 is attached as **Exhibit F**.

- U.S. Registration No. 3,621,454 registered on May 19, 2009 for the mark CENTRAL PARK in connection with "perfume" and cites a date of first use at least by July 2004 and has been continually used in commerce since then. This registration is incontestable, valid, and subsisting. A true and accurate copy of the

8

registration certificate of U.S. Registration No. 3,621,454 is attached as **Exhibit G.**

- U.S. Registration No. 4,255,053 registered on December 4, 2012 for the mark CENTRAL PARK WEST in connection with "Fragrances for personal use, namely, perfume and colognes; body lotions, cosmetics, namely, non-medicated skin care preparations" and cites a date of first use at least by March 15, 2012 and has been continually used in commerce since then. This registration is valid and subsisting. A true and accurate copy of the registration certificate of U.S. Registration No. 4,255,053 is attached as **Exhibit H.**

- U.S. Registration No. 4,452,462 registered on December 17, 2013 for the mark CENTRAL PARK SOUTH in connection with "Fragrances for personal use, namely, perfumes, colognes, body lotions, body creams, skin lotions, skin creams" and cites a date of first use at least by March 15, 2013 and has been continually used in commerce since then. This registration is valid and subsisting. A true and accurate copy of the registration certificate of U.S. Registration No. 4,452,462 is attached as **Exhibit I.**

The foregoing trademark registrations listed in **Exhibit F** through **Exhibit I** are collectively referred to as "Laurice's CENTRAL PARK Marks."

33.     As shown in **Exhibit J** and depicted below, Laurice's CENTRAL PARK Marks have been used by Laurice on its product packaging for perfumes.



34.     Laurice also owns all right, title, and interest in and to several federal trademark registrations which reference or connote New York City or its surrounding area. A list of these other federal registrations is attached as **Exhibit K.** These registrations demonstrate Laurice's extensive good will and association with everything New York.

35.     Because of Laurice's extensive use of the Laurice's NOLITA Marks, Laurice's HIGH LINE Marks, and Laurice's CENTRAL PARK Marks, the aforementioned marks have built up significant goodwill and are commonly associated with New York City.

36.     Due to Laurice's long use, extensive sales, and promotional and advertising activities, Laurice's NOLITA Marks, Laurice's HIGH LINE Marks, and Laurice's CENTRAL PARK Marks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Laurice's NOLITA Marks, Laurice's HIGH LINE Marks, and Laurice's CENTRAL PARK Marks immediately conjure up Laurice's well-known association with New York City that the trade and consumers alike recognize.

**Proceedings to Cancel Kierin's Registrations for SANTAL PARK and NOLITA NOIR**

10

37.    On May 8, 2018, the USPTO granted Kierin a trademark registration for SANTAL PARK, Registration No. 5,465,800, covering "Fragrances made in significant part of sandalwood." Kierin's application for SANTAL PARK was filed on March 6, 2017 with an intent-to-use basis, and a statement of use was filed by Kierin on March 8, 2018.

38.    On May 8, 2018, the USPTO granted Kierin a trademark registration for NOLITA NOIR, Registration No. 5,465,799 covering "Fragrances." Kierin's application for NOLITA NOIR was filed on March 6, 2017 with an intent-to-use basis, and a statement of use was filed by Kierin on March 8, 2018.

39.    On June 26, 2018 Laurice filed Petitions for Cancellation with the Trademark Trial and Appeal Board ("TTAB") in the USPTO against Registration Nos. 5,465,799 and 5,465,800 for NOLITA NOIR and SANTAL PARK asserting a likelihood of confusion with Laurice's NOLITA Marks and Laurice's CENTRAL PARK Marks (TTAB Proceeding Nos. 92068887 and 92068828).

### Defendant's Unlawfully Competing Acts

40.    Upon information and belief, Kierin released fragrances and perfumes in early 2018. The fragrances at issue are named NOLITA NOIR, SANTAL PARK, and HIGHLINE FLIRT.

41.    According to Kierin's website, kierin-nyc.com, Kierin "is a bold, disruptive brand challenging the rules of fragrance" which "invites people 'to be inspired, not defined or confined, by fragrance.'" Kierin's website states that "each fragrance is an artfully crafted collage of scents inspired by energetic vibes of an urban lifestyle" and that Kierin "connects the human experience of scent with story telling and hopes that people will make the brand deeply personal through their own individual stories." See **Exhibit L**.

42.    Kierin, on its website, markets and advertises its HIGHLINE FLIRT fragrance with images of a New York City Ninth Avenue street sign and images of The High Line park, located in New York City. True and accurate screenshots of Kierin's website advertising, marketing, and offering the HIGHLINE FLIRT product for sale is attached as **Exhibit M**.

11

43.     Kierin, on its website, markets and advertises its SANTAL PARK fragrances with images of a New York City 5th Avenue and Central Park West streets signs and images of Central Park. True and accurate screenshots of Kierin's website advertising, marketing, and offering the SANTAL PARK product for sale is attached as **Exhibit N**.

44.     Kierin, on its website, markets and advertises its NOLITA NOIR fragrance with images of a New York City Lafayette streets sign and images of buildings in the NoLiTa neighborhood. True and accurate screenshots of Kierin's website advertising, marketing, and offering the NOLITA NOIR product for sale is attached as **Exhibit O**.

45.     Kierin's advertising, marketing, and sale of its NOLITA NOIR, SANTAL PARK, and HIGHLINE FLIRT fragrances demonstrates that Kierin is actively attempting to connote the New York City locations identified in its marks, namely NoLiTa for NOLITA NOIR, The High Line for HIGHLINE FLIRT, and Central Park for SANTAL PARK with itself and in opposition to Laurice's rights.

46.     It is evident that the Kierin's adoption and use of NOLITA NOIR, HIGHLINE FLIRT, SANTAL PARK along with the adoption and use of photographic images of the New York City street signs and neighborhoods on its packaging and marketing materials for Kierin's NOLITA NOIR, HIGHLINE FLIRT, SANTAL PARK fragrances was done in an effort to trade off of Laurice's NOLITA Marks, Laurice's HIGH LINE Marks, Laurice's CENTRAL PARK Marks, and Laurice's good-will and strong association with New York City.

47.     The term "NOLITA" in Kierin's NOLITA NOIR mark and registration is identical to the term "NOLITA" in Laurice's NOLITA Marks. The addition of the term "NOIR," a term which translates to "black," is insufficient to distinguish Kierin's NOLITA NOIR mark from Laurice's NOLITA Marks. Kierin's NOLITA NOIR mark and registration looks nearly the same as Laurice's NOLITA Marks. Kierin's NOLITA NOIR mark and registration is pronounced and sounds nearly the same as Laurice's NOLITA Marks. Kierin's NOLITA NOIR mark and registration shares a similar connotation and commercial impression to Laurice's NOLITA Marks. Both connote the same location, the neighborhood of NoLiTa (which stands for

12

North of Little Italy) located in New York City. As such, both Kierin's NOLITA NOIR mark and registrations and Laurice's NOLITA Marks share identical or substantially similar connotations. Furthermore, Kierin's NOLITA NOIR product, along with the advertising and marketing materials thereof, also mimics Laurice's original and distinctive content which Laurice uses on its own fragrances, products, and promotional materials long before Kierin's release of the NOLITA NOIR product. Specifically, the product packaging and advertising/marketing materials for Kierin's NOLITA NOIR product feature highly stylized lips, which are highly similar to the product packaging and trade dress featured on products bearing Laurice's NOLITA Marks. A side-by-side comparison of Kierin's NOLITA NOIR product with Laurice's trade dress for products bearing Laurice's NOLITA Marks is attached as **Exhibit P.** It is evident that Kierin intended to trade off Laurice's good will through the rote impersonation of Laurice's products and original content.

48.     The term "HIGHLINE" in Kierin's HIGHLINE FLIRT mark is nearly identical to the term "HIGH LINE" in Laurice's HIGH LINE Marks. The addition of the term "FLIRT" is insufficient to distinguish Kierin's HIGHLINE FLIRT mark from Laurice's HIGH LINE Marks. Kierin's HIGHLINE FLIRT mark looks nearly the same as Laurice's HIGH LINE Marks. Kierin's HIGHLINE FLIRT mark is pronounced and sounds nearly the same as Laurice's HIGH LINE Marks. Kierin's HIGHLINE FLIRT mark shares a similar connotation and commercial impression to Laurice's HIGH LINE Marks. Both connote the same location, the High Line Park spanning from the Meatpacking district through Chelsea located in New York City. As such, both Kierin's HIGHLINE FLIRT Mark and Laurice's HIGH LINE Marks share identical or substantially similar connotations.

49.     The term "SANTAL" in Kierin's SANTAL PARK mark and registration is highly similar to the term "CENTRAL" in Laurice's CENTRAL PARK Marks. The term "SANTAL" in Registrant's Mark is phonetically similar to the term "CENTRAL" in Laurice's CENTRAL PARK Marks and there are no other terms in Kierin's SANTAL PARK mark and registration to distinguish it from Laurice's CENTRAL PARK Marks. Kierin's SANTAL PARK mark looks

nearly the same as Laurice's CENTRAL PARK Marks. Kierin's SANTAL PARK mark and registration is pronounced and sounds nearly the same as Laurice's CENTRAL PARK Marks. Kierin's SANTAL PARK mark and registration shares a similar connotation and commercial impression to Laurice's CENTRAL PARK Marks. Both connote the same location, Central Park in the borough of Manhattan located in New York City. Kierin's connotation and association with Central Park is made clear by its use of Central Park street signs in Kierin's advertising and marketing materials, as shown in Exhibit N. As such, both Kierin's SANTAL PARK mark and registration and Laurice's CENTRAL PARK Marks share identical or substantially similar connotations.

## COUNT I

## VIOLATION OF 15 U.S.C §1114 WITH RESPECT TO LAURICE'S NOLITA MARKS

50.    Laurice repeats and realleges each allegation in paragraphs 1 to 49 as if fully set forth herein.

51.    Laurice has put Kierin on notice of Laurice's NOLITA Marks and despite such notice Kierin has continued its infringing activities.

52.    The fragrances/perfumes offered by Kierin under its NOLITA NOIR mark/registration are identical to or substantially similar to, and/or closely related to Laurice's fragrances and perfumes and Laurice's NOLITA Marks.

53.    The fragrances/perfumes offered by Kierin under NOLITA NOIR mark/registration are and will be offered through the same and/or similar channels of trade in which Laurice's fragrances and perfumes under Laurice's NOLITA Marks are and/or will be offered and/or otherwise marketed.

54.    Laurice's rights in Laurice's NOLITA Marks are prior and superior to those of Kierin and its NOLITA NOIR marks/registrations.

55.    The foregoing activities of Kierin violate 15 U.S.C. § 1114 (a). Customers, prospective customers, and the trade have been and are likely to be confused, deceived, and misled by Kierin's actions, and to believe that there is an association, sponsorship, or

14

endorsement between Kierins's NOLITA NOIR fragrances and Laurice, Laurice's products, and/or Laurice's NOLITA Marks as a consequence of those activities, when in fact there is none.

56.    Use by Kierin of NOLITA NOIR on fragrances constitutes clear and direct infringement of Laurice's trademark rights, namely Laurice's NOLITA Marks.

57.    The foregoing activies of the Kierin infringe the valuable trademark rights of Laurice in Laurice's NOLITA Marks for the improper benefit of Kierin.

58.    The acts of Kierin described herein were undertaken without the permission, license, or consent of Laurice.

59.    Kierin's rote copying of Laurice original content, including the stylized lips design on Kierin's NOLITA NOIR fragrance demonstrates that Kierin is intentionally and willfully attempting to trade off the good will of Laurice.

60.    Kierin's foregoing activities have irreparably damaged Laurice and have further caused monetary damages in an amount yet unknown. Kierin's wrongful acts have caused and will continue to cause Laurice to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT II

## VIOLATION OF 15 U.S.C §1114 WITH RESPECT TO LAURICE'S HIGH LINE MARKS

61.    Laurice repeats and realleges each allegation in paragraphs 1 to 60 as if fully set forth herein.

62.    Laurice has put Kierin on notice of Laurice's HIGH LINE Marks and despite such notice Kierin has continued its infringing activities.

63.    The fragrances/perfumes offered by Kierin under its HIGHLINE FLIRT mark are identical to or substantially similar to, and/or closely related to Laurice's fragrances and perfumes and Laurice's HIGH LINE Marks.

15

64.     The fragrances/perfumes offered by Kierin under the HIGHLINE FLIRT mark are and will be offered through the same and/or similar channels of trade in which Laurice's fragrances and perfumes under Laurice's HIGH LINE Marks are and/or will be offered and/or otherwise marketed.

65.     Laurice's rights in Laurice's HIGH LINE Marks are prior and superior to those of Kierin and its marks/registrations.

66.     The foregoing activities of Kierin violate 15 U.S.C. § 1114 (a). Customers, prospective customers, and the trade have been and are likely to be confused, deceived, and misled by Kierin's actions, and to believe that there is an association, sponsorship, or endorsement between Kierins's HIGHLINE FLIRT fragrances and Laurice, Laurice's products, and/or Laurice's HIGH LINE Marks as a consequence of those activities, when in fact there is none.

67.     Use by Kierin of HIGHLINE FLIRT on fragrances constitutes clear and direct infringement of Laurice's trademark rights, namely Laurice's HIGH LINE Marks.

68.     The foregoing activies of the Kierin infringe the valuable trademark rights of Laurice in Laurice's HIGH LINE Marks for the improper benefit of Kierin.

69.     The acts of Kierin described herein were undertaken without the permission, license, or consent of Laurice.

70.     Kierin's foregoing activities have irreparably damaged Laurice and have further caused monetary damages in an amount yet unknown. Kierin's wrongful acts have caused and will continue to cause Laurice to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT III

## VIOLATION OF 15 U.S.C §1114 WITH RESPECT TO LAURICE'S CENTRAL PARK MARKS

71.     Laurice repeats and realleges each allegation in paragraphs 1 to 70 as if fully set forth herein.

16

72.     Laurice has put Kierin on notice of Laurice's CENTRAL PARK Marks and despite such notice Kierin has continued its infringing activities.

73.     The fragrances/perfumes offered by Kierin under its SANTAL PARK mark are identical to or substantially similar to, and/or closely related to Laurice's fragrances and perfumes and Laurice's CENTRAL PARK Marks.

74.     The fragrances/perfumes offered by Kierin under the SANTAL PARK mark are and will be offered through the same and/or similar channels of trade in which Laurice's fragrances and perfumes under Laurice's CENTRAL PARK Marks are and/or will be offered and/or otherwise marketed.

75.     Laurice's rights in Laurice's CENTRAL PARK Marks are prior and superior to those of Kierin and its marks/registrations.

76.     The foregoing activities of Kierin violate 15 U.S.C. § 1114 (a). Customers, prospective customers, and the trade have been and are likely to be confused, deceived, and misled by Kierin's actions, and to believe that there is an association, sponsorship, or endorsement between Kierins's SANTAL PARK fragrances and Laurice, Laurice's products, and/or Laurice's CENTRAL PARK Marks as a consequence of those activities, when in fact there is none.

77.     Use by Kierin of SANTAL PARK on fragrances constitutes clear and direct infringement of Laurice's trademark rights, namely Laurice's CENTRAL PARK Marks.

78.     The foregoing activies of the Kierin infringe the valuable trademark rights of Laurice in Laurice's CENTRAL PARK Marks for the improper benefit of Kierin.

79.     The acts of Kierin described herein were undertaken without the permission, license, or consent of Laurice.

80.     Kierin's foregoing activities have irreparably damaged Laurice and have further caused monetary damages in an amount yet unknown. Kierin's wrongful acts have caused and will continue to cause Laurice to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1125(a)

81.     Laurice repeats and realleges each allegation in paragraphs 1 to 80 as if fully set forth herein.

82.     The foregoing acts of Kierin constitute false designation of origin, false description, and false representations in commerce that the Kierin's fragrances are that of Laurice, or is sponsored, approved, authorized by, or affiliated with Laurice.

83.     Kierin's actions are likely to cause confusion or mistake among consumers and the general public as to the true origin, source, sponsorship, or affiliation of Kierin's fragrances in violation of §43(a) of the Lanham Act, as amended.

84.     Laurice has no control over the quality of the fragrances provided by Kierin, with the likely result that Laurice's valuable goodwill in its marks will be severely damaged.

85.     Kierin's foregoing activities have irreparably damaged Laurice and have further caused monetary damages in an amount yet unknown. Kierin's wrongful acts have caused and will continue to cause Laurice to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT V

## CANCELLATION OF KIERIN'S FEDERAL REGISTRATION FOR NOLITA NOIR

86.     Laurice repeats and realleges each allegation in paragraphs 1 to 85 as if fully set forth herein.

87.     Laurice seeks cancellation of Kierin's federal trademark registration for NOLITA NOIR, U.S. Reg. No. 5,465,799, pursuant to Sections 14 and 37 of the Lanham Act, 15 U.S.C. §§ 1064 & 1119 because Kierin's federal trademark registration for NOLITA NOIR, when used on or in connection with the goods recited in U.S. Reg. No. 5,465,799 and/or closely related goods/services, is likely to cause confusion with Laurice's NOLITA Marks, to cause mistake,

18

and/or to deceive the trade and/or the public, such that the trade and/or the public are likely to believe that Kierin's goods under the NOLITA NOIR mark have their origin with Laurice and/or that such goods are approved, endorsed, or sponsored by Laurice.

88.     At least for the above reasons, Laurice therefore is likely to be damaged by the continued registration of U.S. Reg. No. 5,465,799 for NOLITA NOIR.

## COUNT VI

### CANCELLATION OF KIERIN'S FEDERAL REGISTRATION FOR SANTAL PARK

89.     Laurice repeats and realleges each allegation in paragraphs 1 to 88 as if fully set forth herein.

90.     Laurice seeks cancellation of Kierin's federal trademark registration for SANTAL PARK, U.S. Reg. No. 5,465,800, pursuant to Sections 14 and 37 of the Lanham Act, 15 U.S.C. §§ 1064 & 1119 because Kierin's federal trademark registration for SANTAL PARK, when used on or in connection with the goods recited in  U.S. Reg. No. 5,465, 800 and/or closely related goods/services, are likely to cause confusion with Laurice's CENTRAL PARK Marks, to cause mistake, and/or to deceive the trade and/or the public, such that the trade and/or the public are likely to believe that Kierin's goods under the SANTAL PARK mark have their origin with Laurice and/or that such goods are approved, endorsed, or sponsored by Laurice.

91.     At least for the above reasons, Laurice therefore is likely to be damaged by the continued registration of U.S. Reg. No. 5,465,800 for SANTAL PARK.

## COUNT VII

### VIOLATION OF NEW YORK GEN. BUS. LAW §360-l and 349-h

92.     Laurice repeats and realleges each allegation in paragraphs 1 to 91 as if fully set forth herein.

93.     By reason of the practices and acts set forth above, Kierin has injured Laurice's business reputation.

94.     The foregoing activities of Kierin are without the permission, license, or consent

of Laurice and, unless enjoined by this Court, Kierin will continue these practices and acts, thereby harming Laurice's business reputation and causing Laurice immediate and irreparable injury.

95.     Kierin's wrongful acts violate §360-i and 349-h of the New York General Business Law.

96.     Kierin's foregoing activities have irreparably damaged Laurice's reputation and have further caused Laurice monetary damages in an amount as yet unknown. Kierin's wrongful acts have caused and will continue to cause Laurice to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT VIII

## UNFAIR COMPETITION AND MISAPPROPRIATION UNDER THE COMMON LAW

97.     Laurice repeats and realleges each allegation in paragraphs 1 to 96 hereof as if fully set forth herein.

98.     The aforesaid activities of Kierin misappropriate and trade upon the fine reputation and goodwill of Laurice, thereby injuring that reputation and goodwill, and unjustly divert from Laurice to Kierin the benefits rightfully belonging to Laurice.

99.     The aforesaid activities of Kierin constitute unfair competition, false advertising, and misappropriation under the common law.

100.     The aforesaid activities of Kierin are likely to result in confusion between Kierin's fragrances and Laurice and/or Laurice's fragrances.

101.     The aforesaid activities of Kierin have caused and will cause Laurice to sustain monetary damage, loss, and injury.

102.     Kierin continue to engage in the foregoing activities knowingly and willfully and in total disregard of Laurice's intellectual property rights.

20

103.    Kierin's foregoing activities have irreparably damaged Laurice and have further caused Laurice monetary damages in an amount as yet unknown.  Kierin's wrongful acts have caused and will continue to cause Laurice to suffer irreparable harm for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Laurice El Badry Rahme LTD., respectfully prays that this Court enter judgment in its favor and against Kierin as follows:

1.    Granting temporary, preliminary and permanent injunctive relief restraining and enjoining Kierin, its officers, agents, employees, and attorneys and all those persons or entities in active concert or participation with it from:

a.    using the NOLITA NOIR, HIGHLINE FLIRT, and SANTAL PARK marks;

b.    using any mark confusingly similar to Laurice's NOLITA Marks, Laurice's CENTRAL PARK Marks, and/or Laurice's HIGH LINE Marks:

c.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any fragrances with marks which are substantially similar to Laurice's NOLITA Marks, Laurice's CENTRAL PARK Marks, and Laurice's HIGH LINE Marks;

d.    engaging in any other activity constituting unfair completion with Laurice, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations or stylized design elements associated with Laurice;

e.    engaging in any other activity that will dilute the distinctiveness of the Laurice's trademarks, including Laurice's NOLITA Marks, Laurice's CENTRAL PARK Marks, Laurice's HIGH LINE Marks; and

f.     Committing any other act which falsely represents or which has the effect of falsely representing that the fragrances of Kierin are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Laurice;

2.     Ordering Kierin to recall from any distributors and retailers and to deliver to Laurice for destruction or other disposition all remaining inventory of all infringing products, including all advertisements, promotion and marketing materials for the same;

3.     Ordering an accounting by Kierin of all gains, profits and advantages derived from their wrongful acts;

4.     Awarding Laurice all of Kierin's profits and all damages sustained by Laurice as a result of Kierin's wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. §1117(a);

5.     Awarding treble damages in the amount of Kierin's profits or Laurice's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

6.     Awarding applicable interest, costs, disbursements and attorney's fees, pursuant to 15 U.S.C. § 1117(b);

7.     Awarding Laurice statutory damages pursuant to 15 U.S.C. §1117(c);

8.     Such other relief as may be just and proper.

## JURY DEMAND

Plaintiff Laurice demands a trial by jury on all facts so triable.

Dated:   New York, New York
         August 9, 2018

GOTTLIEB,  RACKMAN  &  REISMAN,  P.C.

By:_____

George Gottlieb (GG5761)
Marc P. Misthal (MM6636)
270 Madison Avenue
New York, New York 10016
Phone: (212) 684-3900
Fax: (212) 684-3999
ggottlieb@grr.com
mmisthal@grr.com
Attorneys for Plaintiff